UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>  v.                                                                                  )<br>)<br>15.    LUIS ALFREDO BAEZ, a/k/a "Alexis )<br>        Rivera-Delgado," a/k/a "Eduardo )<br>        Vasquez," a/k/a "Ariel Maldonado," )<br>)<br>                    Defendant                                          ) | Cr. No. 18-10468-NMG |

GOVERNMENT'S SENTENCING MEMORANDUM

On February 23, 2021, LUIS ALFREDO BAEZ, a/k/a "Alexis Rivera-Delgado," a/k/a "Eduardo Vasquez," a/k/a "Ariel Maldonado" (hereinafter, "BAEZ" or the "defendant") pleaded guilty to Counts One and Thirteen of a superseding indictment charging him with conspiracy to distribute and to possess with intent to distribute 100 grams or more of heroin, 400 grams or more of fentanyl, cocaine, cocaine base, and marijuana (Count One) and conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine (Count Thirteen).

In the final version of the Pre-Sentence Report ("PSR"), dated June 17, 2021, the United States Probation Office concluded that BAEZ's total offense level ("TOL") was 21, his criminal history category ("CHC") was I, and his guideline sentencing range ("GSR") was 37-46 months. PSR, ¶ 77.[1] For the reasons set out below, the government requests that the Court impose a sentence of 41 months, a sentence at the middle of his correctly calculated guideline range.

## The Offense

As is described in detail in the PSR (¶¶ 9-23), for several years law enforcement has been investigating significant gang, gun-related violence, and drug trafficking activities in the city of

---

[1] BAEZ met all five prongs of USSG § 5C1.2.

Brockton, including the activities of Djuna Goncalves (hereinafter, "Goncalves"). In September 2018, agents from the Department of Homeland Security, Homeland Security Investigations (HSI), the Drug Enforcement Administration (DEA), and the Massachusetts State Police (MSP) began an investigation into a drug trafficking organization headed by Goncalves. Beginning in October 2018, agents received authorization to intercept a telephone used by Goncalves. Interceptions from Goncalves' phone led agents to identify one of Goncalves drug suppliers, Jose Perez Felix, a/k/a "Grande" (hereinafter, "Perez Felix"), a Boston-based drug trafficker. Interceptions from Perez Felix's phone led agents to identify BAEZ, as one of Perez Felix's cocaine suppliers.

BAEZ was a drug trafficker operating in the Bowdoin Street – Geneva Avenue section of Boston. BAEZ worked with others, including co-defendant Luis Mejia Guerrero (hereinafter, "Guerrero") to distribute cocaine to multiple customers on a regular basis. Agents received authorization to intercept telephones used by both BAEZ and Guerrero. Those interceptions revealed that both men worked together to distribute cocaine, often using coded language, and that they utilized a stash house located at 23 Mount Ida Road in Dorchester, Massachusetts. On a near daily basis, using a pole camera, agents watched BAEZ, Guerrero, and others enter and exit the stash house after speaking in code about picking up or delivering cocaine.

For example, on April 9, 2019, agents intercepted a call between BAEZ and a male who identified himself as "Nelson." During the call, Nelson asked BAEZ, "Can I see you within an hour, more or less?" BAEZ responded, "If it is for a whole one, yes, but if it is for 'the piece' it will have to be for a little later." Nelson responded, "Then it would be later on, Alfredo, because I don't want to take a lot, you know? Things are moving slow, I'm probably going to take too long to pay that back to you, get it?" BAEZ told Nelson, "No, but if you want to do that fast, . . . I will have to go over there to get that for you." Nelson replied, "Well, if you don't care that I take three

weeks, then give me a whole one." BAEZ responded, "No, it's fine. I'll give you this one for thirteen, you heard?" Later in the call, Nelson told BAEZ, "No, it's fine. Give me a whole one. I can work better with a whole one." BAEZ told Nelson, "So I can give it to Gordo, you know? He has one himself." Based on the calls, and the going price at that time for cocaine, agents believe Nelson ordered an ounce (or 28 grams) of cocaine ("a whole") one from BAEZ for $1,300 ("one for thirteen"). Additional intercepted calls and surveillance indicate that BAEZ asked Guerrero ("Gordo") to get an ounce of cocaine from the Mt. Ida stash house and that Guerrero did so and brought the drugs to Nelson.

In early May 2019, intercepted calls from BAEZ and Guerrero's phones indicated that their drug cell was dry and that they were looking for additional drug supply. On May 13, 2019, agents intercepted a call between BAEZ and co-defendant Cesar Rodriguez-Sanquentin (hereinafter, "Rodriguez-Sanquentin"), who they identified as a runner for a drug trafficking organization operating in the Methuen-Lawrence area of Massachusetts. During that call, Rodriguez-Sanquentin offered BAEZ 500 grams of cocaine ("There is half of something around… I will see you with the three. They're giving it to me with the two, so I can give it with the three… I called you first to see if you wanted half before I called someone else.").

Agents conducting surveillance observed Rodriguez-Sanquentin exit his residence carrying a bag, which he placed in the engine compartment of his vehicle. At the request of agents, a Massachusetts State Trooper conducted a stop of the vehicle once it was in Dorchester headed to BAEZ. As his vehicle was being pulled over, agents intercepted a call from Rodriguez-Sanquentin to BAEZ, during which he told BAEZ, "They have me stopped here at the beach." BAEZ responded, "Really?" and "They are always there." During the stop, agents recovered one kilogram of cocaine from the engine compartment of Rodriguez-Sanquentin's vehicle, as

3

well as his cell phone. Agents dialed the number BAEZ had been in contact with to purchase cocaine that day, Rodriguez-Sanquentin's cell phone rang.

Agents conducting surveillance observed BAEZ at his stash house at 23 Mount Ida, then observed him drive to the area where Rodriguez-Sanquentin was stopped by the police. At the same time, agents intercepted BAEZ making several calls, indicating that his supplier had been stopped and that he needed to clean out the stash house. For example, agents intercepted a call between BAEZ and an individual identified only as "Casmiro," during which BAEZ told him about Rodriguez-Sanquentin getting stopped by police as he "was on his way here with something big." BAEZ told Casmiro that he gave Rodriguez-Sanquentin his address in a "message," and said, "I'll have to go back to take everything out of the house, what do you think?" Casmiro responded, "You have to do it right away." BAEZ then stated, "For you to hold some money for me, because I just have two little stuff, if anything I will flush it." BAEZ went on to say, "Listen, I am going to flush that shit, because there is just little stuffs."

Agents also intercepted a call between BAEZ and Guerrero, during which BAEZ told Guerrero about the stop, and also told him that he had cleaned out their stash house. The following is an excerpt of a translation of the call between BAEZ and Guerrero following Rodriguez-Sanquentin's arrest:

| | |
|---|---|
| GUERRERO: | Tell me, man, I'm at the pharmacy. What are you up to? |
| BAEZ: | I took everything out in a hurry, I'm on my way. Which pharmacy are you at? |
| GUERRERO: | Here at the Center. |
| BAEZ: | Andy's cousin was coming this way, man, he called me and he told me – He was coming with his wife driving and his son. The State Police had him stopped at the beach. I went by there, man. And they already had him lying down on |

4

| | |
|---|---|
| | the ground. And I had given the address from there, man. I went back and took everything right now. |
| GUERRERO: | From over there, from the…? The drawer? [voices overlap] |

Agents conducting surveillance observed BAEZ leaving the stash house carrying a large black trash bag, get into a vehicle and drive away. At the request of agents, a marked Boston Police cruiser stopped BAEZ and placed him into custody. Inside the black plastic bag was a digital scale, a cellular telephone, clear plastic bags commonly used to package drugs for street level sale, and a large wooden box with a padlock. After obtaining a warrant, agents opened the wooden box and seized $15,450 in U.S. currency, three green plastic twists of a white powdery substance, and another plastic residue. Laboratory results for the white powdery substance from the wooden box confirm the substance to be 35.82 grams of cocaine. Agents also searched BAEZ's residence, pursuant to a search warrant, and seized $45,200 in U.S. currency.

### **Recommended Sentence**

Given the nature of the offense, and the history and characteristics of the defendant, the government submits that a sentence of 41 months incarceration is warranted. Based on the evidence gathered in this investigation, it is clear that BAEZ was a member of a drug trafficking organization that routinely supplied others with cocaine, who in turn sold to their own customers. Surveillance over the course of the investigation, combined with the interceptions, particularly those described above, establish that both BAEZ and Guerrero utilized 23 Mount Ida as a stash house for their drugs and drug proceeds.

Moreover, BAEZ's criminal history is understated. The PSR properly calculates BAEZ's criminal history score as zero, but that is because he had been in default on a 2006 case for trafficking cocaine—essentially the same offense at issue here—for **12 YEARS**. PSR, ¶¶ 46, 48-

49. If BAEZ had been convicted of that crime, his criminal history score would likely result in a criminal history category of II, which would result in a GSR of 41-51 months. In light of the nature and scope of his conduct, as well as his understated criminal history, a sentence of 41 months – the middle of the GSR – is an appropriate sentence. That sentence will serve general deterrence, specifically deter BAEZ, promote respect for the law, and protect the public. *See* 18 U.S.C. § 3553(a). A sentence of 41 months, followed by four years of supervised release, is a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. *Id.*

Wherefore, the government respectfully requests that the Court adopt the recommendation of the government and sentence BAEZ to 41 months in prison and four years of supervised release. While the government anticipates that BAEZ will be deported at the completion of his sentence, it is appropriate for the Court to impose a period of supervised release in the event that BAEZ attempts to illegally return to the United States.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: */s/ Alathea E. Porter*
     Alathea E. Porter
     Christopher Pohl
     Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 21, 2020.

*/s/ Alathea E. Porter*
Alathea E. Porter
Assistant U.S. Attorney