# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Criminal No. 18-cr-10468 |
| LUIS ALFREDO BAEZ | **FILED UNDER SEAL – LEAVE TO FILE GRANTED ON JUNE 21, 2021** |
| Defendant. | |

## SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT LUIS ALFREDO BAEZ

Mr. Luis Alfredo Baez, through undersigned counsel, respectfully submits this Sentencing Memorandum.  For the reasons explained below, on the basis of Mr. Baez's acceptance of responsibility, the honesty he displayed during his safety valve proffer, and his challenging family circumstances, the Court should impose a sentence of thirty months of incarceration.  He should also receive credit for the more than 25 months he has spent in custody for this case at the Plymouth Country Correctional Facility since May 13, 2019.  This sentence aligns with the federal sentencing principles in light of all the relevant circumstances.  Due to Mr. Baez's financial situation, we recommend that no monetary fine be imposed.

## I.   INTRODUCTION

At the age of fifty-one, Mr. Baez made some very poor choices when he started acting as a source of cocaine supply to individuals in the Boston area.  That he engaged in this conduct out of desperation to provide for his family to keep them out of the poverty and food insecurity he suffered while growing up does not excuse his behavior, though it provides some context.  Rather than deny his misconduct, Mr. Baez notified the U.S. Attorney's Office ("USAO") of his willingness to admit his guilt and sat for a proffer session with numerous government agents and

lawyers on March 12, 2021, █████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████

    In addition to his admission of guilt, Mr. Baez has also maintained a virtually spotless record while in custody.  Mr. Baez maintained this record during a turbulent time in the correctional facility due to the dangers, heightened fear, and increased isolation brought on by the COVID-19 pandemic.  Even though he was not afforded the freedoms and privileges typically offered to those in custody, Mr. Baez stayed steady.  During lockdowns forced by COVID-19, he focused on reading his bible and playing cards.  Detention has not been an easy period for Mr. Baez due to the limited programming and infrequent opportunities to leave his cell during the pandemic, but he has maintained a strong relationship with his mother, his siblings, and a family friend that have helped him to stay strong.  Mr. Baez has only one disciplinary report, which was for "misusing the inmate telephone system" when he called his brother-in-law's wife and she,

without asking his permission, patched in his brother-in-law who was also detained at the time. Mr. Baez himself has not taken any actions contrary to the rules of the facility while detained and has exhibited exemplary behavior.  Mr. Baez's strict adherence to the rules and regulations of Plymouth Correctional evidences his deep remorse and his commitment to moving forward from this dark period of his life to begin a new chapter with his mother and siblings in the Dominican Republic once his time is served.

Based on Mr. Baez's acceptance of responsibility and all other relevant factors the Court is directed to consider under 18 U.S.C. Section 3553(a), Mr. Baez respectfully requests that the Court impose (i) a sentence of thirty months of incarceration, (ii) a mandatory special assessment of $200, and (iii) no monetary fine.  This would result in a sentence which falls within the applicable sentencing guideline range as calculated by the defendant, and is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing proceedings.[1]

## II.    ANALYSIS

Because of Mr. Baez's honest and credible testimony during his proffer session with the Government and pursuant to Section 5C1.2 of the Guidelines, this Court's sentencing discretion will not be constrained by any statutory mandatory minimum.  Thus, the Court is free to impose whatever sentence is, in the Court's own judgment sufficient, "but not greater than necessary," to comply with the purposes of Section 3553(a)(2).  The analysis below addresses the applicable Guidelines calculation and then addresses the 18 U.S.C. § 3553(f) ("the safety valve") and the critical 18 U.S.C. § 3553(a) factors that are intended to guide the Court's analysis.

---

[1] The purpose of sentencing proceedings include "the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a).

### A. Preliminary Calculations of the Advisory Guidelines Range

Mr. Baez has a Criminal History category I with Base Offense level 24. Pre-Sentencing Report ("PSR") ¶¶ 3, 46. Mr. Baez's decision to plead guilty to the indictment entitles him to a three point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. PSR ¶¶ 3, 39–40. This three-level reduction for acceptance of responsibility results in an Adjusted Offense Level of 21.

### B. 18 U.S.C. § 3553(f) Permits the Court to Impose a Sentence Without Regard to Any Statutory Minimum

Mr. Baez's Offense Level is also reduced by application of the safety valve. Section 5C1.2 of the Sentencing Guidelines permits the Court to impose a sentence without regard to any statutory minimum as long as five criteria are satisfied under 18 U.S.C. § 3553(f). In particular, a defendant may receive a sentence without regard to the statutory minimum if: (1) the defendant does not have any disqualifying prior convictions; (2) the defendant did not engage in violence or threats of violence in connection with the offense; (3) the conduct did not result in death or serious bodily injury; (4) the defendant was not a supervisor in the offense; and (5) before sentencing, the defendant truthfully provided the Government all information and evidence concerning the offenses that were part of a common scheme. 18 U.S.C. § 3553(f).

The Government agrees that Mr. Baez undoubtedly meets this standard. PSR ¶¶ 33, 76. Mr. Baez did not use violence or credible threats of violence or posses a firearm or other dangerous weapon in connection with the offense. Further, his offense did not result in death or serious bodily injury to any person and he was not an organizer, leader, manager or supervisor of others in the offense. Finally, as stated above, Mr. Baez has truthfully and credibly provided the Government all information and evidence he has concerning the offenses related to his suppliers and other Boston-based suppliers in the area. Thus, as the Government acknowledges, Mr. Baez is entitled

to a two-level reduction under U.S.S.G. § 2D1.1(b)(18), resulting in a Total Offense Level of 19. *See* 18 U.S.C. § 3553(f).

### C.  An Enhancement Under USSG §2Dl. l (b)(12) is Not Applicable Because Mr. Baez Did Not Maintain a Premises for the Primary Purpose of Distributing a Controlled Substance

Mr. Baez's Offense Level should not receive a two-level "stash house" enhancement because he did not maintain a premises for the purpose of manufacturing or distributing a controlled substance under USSG §2Dl. l (b)(12).  "The stash house enhancement applies when a defendant knowingly maintains a premises for the purpose of manufacturing or distributing a controlled substance." *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015) (citing USSG § 2D1.1, comment n.17).  For the enhancement to apply, "drug distribution must be a '*primary or principal*' use, as opposed to a use that is merely 'incidental or collateral.'" *Id.* at 385 (emphasis added).

Here, Mr. Baez's distribution of drugs from 23 Mount Ida Road was incidental to his primary use of the apartment as his home where he regularly slept, kept his personal belongings, received mail, and spent time with his son, Donald Baez.  Exhibit G (Aff. of D. Baez) ¶¶ 3–7.  Mr. Baez also hosted visitors at his 23 Mount Ida home, including his two daughters, who sometimes slept over in the bunk beds Mr. Baez maintained for them at this home.  Exhibit G (Aff. of D. Baez) ¶ 8.  Mr. Baez's use of 23 Mount Ida Road in connection with his distribution of drugs was collateral to the other daily activities he carried out at the home that he maintained so that he could live with his son, Donald.  In fact, Donald Baez—who was not involved with this matter—still lives at 23 Mount Ida Road and did so throughout the time that his father Mr. Baez was involved in this drug conspiracy.  Exhibit G (Aff. of D. Baez) ¶ 2.  Therefore, Mr. Baez did not maintain these premises for the primary purpose of distributing a controlled substance and a two-level

enhancement to his Offense Level is not appropriate.  As a result, Mr. Baez's Adjusted Offense Level is 19.

### D.      Personal History and Characteristics of the Defendant

#### 1.      Mr. Baez's Personal History and Characteristics Are Mitigating Factors

Growing up, Mr. Baez and his family suffered from extreme poverty and food insecurity, but he was always surrounded by a family who loved him and wanted to support him in any way they could.  Mr. Baez was born on February 1, 1968 in Baní, Dominican Republic.  PSR ¶ 51.  His father, Angel Peña, worked in agriculture in the Dominican Republic and passed away fairly recently.  PSR ¶¶ 51–52.  His mother, Flor Maria Baez, is still alive and currently resides in the Dominican Republic.  PSR ¶ 53.  Mr. Baez's father worked in the fields in the Dominican Republic and tried to earn enough of a living to support his five children.  PSR ¶51, 54–57.  Despite all of Angel Peña's efforts, Mr. Baez and his family grew up very poor.  PSR ¶ 51.  This abject poverty left Mr. Baez and his family to live in a one-room house where multiple family members were often crammed into the same bed.  PSR ¶ 51.  As a child, Mr. Baez never had enough to eat.  PSR ¶ 51.

Mr. Baez's childhood, which was marked by intense hunger, difficult living conditions, and a lack of basic living standards, was even harder to endure because he was often ridiculed in his community for his family's extreme poverty.  PSR ¶ 51.  Many in the community would comment on the state of his torn clothes, and his family rarely had money for shoes, so he would often be reduced to going barefoot.  PSR ¶ 51.  Mr. Baez was forced to drop out of school after he completed the seventh grade because he needed to help to support his family.  *See* PSR ¶ 70.

Although they could not protect him from extreme poverty, food insecurity, or ridicule, Mr. Baez's parents were very loving and caring.  PSR ¶ 51.  They filled their family with that love,

and Mr. Baez maintains close relationships with his siblings and his mother to this day, as demonstrated by the supportive letters submitted to this Court by his mother Flor Maria Baez, his sister Juana Baez, his sister Maribel Baez, and his brother Willy Baez.  *See* Exhibits B–E.  These letters illustrate that in his role as a caretaker for his family, particularly of those who suffer from health issues, Mr. Baez has "helped so many people."  Exhibit C (*Letter from Willy Baez*).  Mr. Baez's mother is "heartbroken" for her son and has been supportive throughout the prosecution of his case.  PSR ¶ 53; Exhibit B (*Letter from Flor Maria Baez*).

Mr. Baez also maintains an incredibly close relationship with his children, who are the center of his world.  Mr. Baez has two young daughters, ages 10 and 7, whom he cares for greatly.  *See* PSR ¶ 60. ████████████████████████████████

████████████████████████████████████████

████████████████████████████  Prior to his arrest in connection with this matter, Mr. Baez was an active father, assisting with all aspects of the girls' lives, particularly with Yhinairy and her medical condition.

Mr. Baez's sons Luis Baez Jr. and Donald Baez, the latter of whom lived with Mr. Baez at 23 Mouth Ida Road, look up to their father and cherish the time they spend with him, as evidenced by the supportive letters submitted to this Court.  *See* Exhibit F (*Letter from Donald Baez*); Exhibit A (*Letter from Luis Baez Jr.*).  Just as his parents cared for him, Mr. Baez has always been loving and caring with his children, including those who live in the Dominican Republic.  *See* Exhibit F (*Letter from Donald Baez*); Exhibit A (*Letter from Luis Baez Jr.*).  When his son Donald was growing up, Mr. Baez spent countless hours on the baseball field with Donald, patiently teaching his son everything he knew about playing baseball, while also instilling in him the importance of looking out for other people.  *See* Exhibit F (*Letter from Donald Baez*).  During their hours playing

baseball, Mr. Baez passed down the lessons he learned from his own childhood about the importance of family. *See* Exhibit F (*Letter from Donald Baez*). Despite the grave mistakes his dad has made, Donald describes his father as "the best man I know." *See* Exhibit F (*Letter from Donald Baez*).

Although he could not spend as much time in person in recent years with his son Luis Jr., who lives in the Dominican Republic, Mr. Baez found ways to support Luis Jr. as well. *See* Exhibit A (*Letter from Luis Baez Jr.*). ██████████████████████████

████████████████████████████████████████████████████████

██████████ Luis Jr. credits Mr. Baez with supporting him through all of his ongoing medical challenges, as Mr. Baez "always tr[ies] to cheer [him] up" and tells Luis Jr. that "the future has something better for [him]." *See* Exhibit A (*Letter from Luis Baez Jr.*). Luis Jr. has struggled to survive due to the challenges of his health problems, but he says that his father is "the reason [he is] still in this world today." *See* Exhibit A (*Letter from Luis Baez Jr.*). In short, Mr. Baez is the rock of his family and they are eager to be reunited with Mr. Baez before their health deteriorates further. *See* Exhibits A–F.

Mr. Baez came to the United States legally in March 2004 in search of an opportunity to build a better life than the one from which he came—a life that would allow him to ensure his children would never suffer from the same poverty and hunger he experienced. Aside from taking care of his children, Mr. Baez also worked in painting and carpentry between 2008 and 2015. Unfortunately, the work was not steady enough and it was very difficult to support himself and his family. Out of desperation and in an effort to support his family and their serious medical challenges, Mr. Baez turned to selling cocaine, a terrible decision he will regret for the rest of his

life.  The last two and a half years in prison have crushed Mr. Baez, often reducing him to tears in counsel meetings as he struggles with the grave and painful consequences of his decisions.

### 2. Mr. Baez has Learned a Very Painful Lesson, and His Acceptance of Responsibility After His Indictment is a Strongly Mitigating Factor

Mr. Baez accepts full responsibility for the conduct that has brought him before the Court, and he understands that he must be held accountable for his mistakes.  Despite this, he looks forward to rebuilding his life in the Dominican Republic once he has served the sentence this Court imposes.  The instant matter has given Mr. Baez an opportunity to reflect on his conduct, cementing his readiness to return to living a law-abiding life and making a life for his family by working an honest job in his home country.  Mr. Baez decided early in his case to accept responsibility for his conduct and took efforts to do so in a timely manner despite the challenges of meeting with attorneys and government agents posed by COVID-19.  Mr. Baez was proud to participate fully and honestly in a safety valve proffer meeting, providing information to the Government to aid in locating "higher-ups" in the Boston area that continue to distribute drugs despite substantial risk to his family.

Mr. Baez's conduct while incarcerated also illustrates that he has learned an important lesson.  His renewed attitude and faith reveals a strong effort to rehabilitate himself and return to being a contributing member of society.  His efforts to stay in close contact with his family, including his mother and siblings in the Dominican Republic, have provided him with a constant reminder of what is important in his life.  Upon the conclusion of this case, Mr. Baez feels motivated and prepared to return to society as a law-abiding citizen, with the support of his family. In the Dominican Republic, where he will be deported once he completes his sentence, he will have his mother, his siblings, and his son Luis Jr.  The attached letters make it clear that Mr. Baez's family is there to support him the minute he completes his sentence.  *See* Exhibits A–F.

**E.     A Lengthy Sentence of Incarceration Would Result in Unwarranted Sentencing Disparities and Would Not Satisfy the Purposes Set Forth in 18 U.S.C. § 3553(a)**

Section 3553(a) of the Sentencing Reform Act of 1984 advises the Court to consider seven specific factors, with the goals of assuring "consistent and fair results" and providing "certainty and fairness" in sentencing.   S. Rep. No. 98-225, at 168–69 (1983), reprinted in 1984 U.S.C.C.A.N., 3182; 28 U.S.C. § 991(b).  The sentence at the high end of the advisory Guidelines range would not serve either of these goals, but would rather punish Mr. Baez far more severely than other, similarly situated offenders.

Section 3553(a)(6) specifies that one factor in sentencing shall be "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  This Court has recognized that a corollary factor is the need to avoid "unwarranted *similarities* . . . among co-conspirators who were not similarly situated."  *United States v. Tejeda*, 550 F. Supp. 2d 204, 209 n.7 (D. Mass. 2008) (quoting *Gall v. United States*, 552 U.S. 38 (2007)) (emphasis in original).

Of all of Mr. Baez's co-defendants to be sentenced thus far, only two have received sentences above thirty months, and Mr. Baez's personal circumstances and involvement in the case distinguish his position here from theirs.   First, agents seized huge amounts of drugs from defendant Cesar Rodriguez-Sanquentin, who was sentenced to thirty-seven months.  Agents seized over 1,000 grams of cocaine from Rodriquez-Sanquentin and only ~36 grams (3.5% of what Rodriguez-Sanquentin possessed) from Mr. Baez.  Mr. Baez's co-defendant Anthony Tsina was sentenced to thirty-four months, a sentence *below* the applicable Guidelines Range, and he had a history of criminal convictions, including one for domestic violence and several older convictions. With no previous criminal convictions, and certainly no history of violence, the factors in Mr. Baez's sentencing are distinct from those present in Tsina's case.  In light of the significant

-10-

differences between Mr. Baez's sentencing factors and those of his co-defendants Rodriguez-Sanquentin and Tsina, a lower sentence than either of his co-defendants received is warranted for Mr. Baez. In any event, the *maximum* sentence that should be imposed on Mr. Baez is thirty-seven months—the sentence Rodriquez-Sanquentin received—given that only a portion of the 1,000 grams of cocaine seized from Rodriguez-Sanquentin was intended for Mr. Baez.

Mr. Baez is more similarly situated to co-defendant Yonatan Lara, who was previously sentenced to twenty-one months—a sentence well below the upper-most bound of the Sentencing Guidelines range. Like Mr. Baez, Mr. Lara had no previous record of conviction and was facing a looming prospect of automatic deportation. A similar sentence below the upper-most bound of the thirty-seven months provided by the Guidelines Range is warranted here, especially in light of Mr. Baez's looming deportation and honesty in speaking with law enforcement in this matter in the face of potential danger to himself and his family.

### F.      The Goal of Deterrence Has Already Been Satisfied

The other purposes of punishment set forth in Section 3553(a) would not be further served by sentencing Mr. Baez to additional time in custody. First, sentencing Mr. Baez to an even longer sentence would not further one of the principal purposes of punishment under Section 3553(a)(2)(B) "to afford adequate deterrence to criminal conduct." Mr. Baez has already served more than two years in custody after his arrest in this case and he has acknowledged his grave mistakes of the past.

Moreover, the two years he has served have been particularly onerous, given the COVID-19 pandemic that has brought heightened anxieties and stressors to those who are incarcerated. Due to safety protocols, his liberty has been greatly constrained for more than a year already. During this time, Mr. Baez gained a deep understanding of the seriousness of his offense, the debt

he owes to society, and the steps he must take to never fall prey to the temptations of illegal drugs. Mr. Baez also gained a deep understanding of how much he has lost because of his own misconduct and the severe consequences that will flow if he ever gets involved with this kind of illicit conduct again. He has not been able to see his young daughters —Arianni and Yhinairy—whom he loves and misses greatly for two years. Yhinairy, the seven year old, misses him dearly and she has not even been able to visit him in jail. Mr. Baez's heartbreak is only compounded by the fact that he is not able to be by Yhinairy's side to comfort her ██████████████████████████████ ██████████████████████ Mr. Baez has also not been able to provide any comfort to his eldest son ████ ██████████████████████████████████ Mr. Baez understands clearly the consequences of his choices—not being able to see his two youngest daughters every day, not being able to drive them to school, and not being able to support the other members of his family who rely on him.

Mr. Baez's acceptance of responsibility, his candor with the Government, and his exceptional behavior during his detention demonstrate concretely his commitment to turning his life around. Mr. Baez respectfully urges the Court in imposing this sentence to take into consideration his background, his looming deportation, and the very difficult isolated conditions of confinement during COVID-19 pandemic.

## III.   THE COURT SHOULD NOT IMPOSE ANY OTHER SANCTIONS ON MR. BAEZ

With respect to a potential fine, Mr. Baez does not have the financial means to pay a fine, even at the low end of the Guidelines range. *See* PSR ¶¶ 73–75. The Guidelines provide that "[t]he court shall provide a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). Consequently, Mr. Baez requests that the Court not impose any financial penalty beyond the $200 Special Assessment.

**IV.**     <u>**CONCLUSION**</u>

For the reasons set forth above, the Court should impose a sentence of thirty months of incarceration and a special assessment of $200.  A longer or more severe sentence will not serve a deterrent or punitive value to the United States and only serves to delay Mr. Baez's reentry into law-abiding life.

Respectfully submitted,

Luis Alfredo Baez
By his attorneys,

Dated: June 21, 2021

/s/ *Joshua S. Levy*
Joshua S. Levy (BBO No. 563017)
Emma Notis-McConarty (BBO No. 696405)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
joshua.levy@ropesgray.com
emma.notis-mcconarty@ropegray.com
Tel: (617) 951-7000

**Certificate of Service**

I hereby certify that on June 21, 2021, a true and correct copy of the foregoing was delivered by electronic mail to Alathea Porter and Christopher Pohl, counsel for the United States of America.

/s/ *Emma Notis-McConarty*

# EXHIBIT A

**Filed Under Seal**

# EXHIBIT B

Extracted from E-mail

Good afternoon your Honor,

I, Flor Maria Baez the mother of Luis Alfredo Baez am communicating with you to BEG for my son's freedom, I'm heartbroken, I don't know what to do, will I see my son before I leave this world? I beg for you to please help him, and us who are his family. Please look into your heart I know you would want the same thing as a mother.

Flor Maria Baez, on May 25th of 2021.

# EXHIBIT C

Extracted from E-mail

Good afternoon your Honor,

I, Willy Geovany Baez, brother of Luis Alfredo Baez,

Dear Honor, I communicate with you to say how much I miss my brother, he is not only a loving person but he has helped so many people! here in Dominican Republic. Will I see my brother again? Please in the name of the Family Baez, Please we beg for forgiveness.

Willy Geovany Baez, on May 25th of 2021

# EXHIBIT D

Extracted from E-mail

Your Honor,

I, Juana Baez, sister of Luis Alfredo Baez,

Dear Honor, please give me and my family what we have been waiting for which is to see our brother, to be with him in this Christmas coming up. Our health issues have increase so much ever since he has been in Jail. Please we beg for forgiveness and freedom to our brother Luis Alfredo Baez, allow us to have another reason to continue living in this world your Honor, please.

Juana Baez, on May 25th of 2021

# EXHIBIT E

Extracted from E-mail

Good afternoon your Honor,

I, Maribel Baez, sister of luis Alfredo Baez

Dear Honor, I may not be the right person to tell you what to do or what decisions you have to make, you are where you are is because of your courage, and education. But as the sister of Luis Alfredo Baez I beg for you to give me and my family here in the Dominican Republic, a chance to see our brother so we can hug him, feel him. We don't know when we will see him again and the majority of us have health issues and others won't last that long. Please your Honor I beg for his forgiveness.

Maribel Baez, on May 25th of 2021

# EXHIBIT F

Extracted from E-mail

Hello Your Honor,

  Thank you for taking the time out of your day to read my letter. My name is Donald Baez I am Luis Baez's second son. We are not all given equal opportunities in this life and we must find ways to get through life. Which is why I would like to thank my father for bringing me and my siblings to this country to have a better chance at life. My father is the best man I know. Ever since I was little he has always taken care of me and all my siblings even if we did not live in the same household. He has always been loving and caring with all of us. Back in my country is where the rest of my family lives and if it wasn't because of my dad they would be struggling to live. ██████████ ████████████████████████ without my dad i am not sure if my brother would of been alive this long without my dad's financial support. People from my hometown that live in boston are always asking about my father and always tell me how he helped them when they got to this country for the first time. Without my dad my siblings and I would not be where we are. He has taught me everything from playing baseball to being a good person, always taught me to look out for other people especially my family. I remember when I first started playing high school baseball, I was horrible. He took the time to train me and by the end of my high school career I made the city allstar. He always tries to bring the best out of people. We all make mistakes in this life and we learn from mistakes. Sometimes we must do what it takes to take care of loved ones even if its not the right thing to do. My father is an example of it, my father is a good man even though he did not make the best choices in life. Please consider my dad as a human being that made mistakes in life trying to provide for his family, a caring person, a good person and not as just another case. Thank you for your time your honor.

-Donald Baez 05/25/2021

# EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No.: 1:18-cr-10468 |
| | ) |
| LUIS ALFREDO BAEZ, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**AFFIDAVIT OF DONALD BAEZ**
**IN SUPPORT OF SENTENCING MEMORANDUM**
**OF LUIS ALFREDO BAEZ**

I, Donald Baez, hereby state and depose as follows:

1. My name is Donald Baez. My father is Luis Alfredo Baez.

2. I currently live at 23 Mount Ida Road, Apartment 3, Dorchester, MA, 02122 ("23 Mount Ida Road"). I have been living at 23 Mount Ida Road since November or December 2018. My name is on the lease. I live at 23 Mount Ida Road full time and I do not have any other residence. I receive mail at 23 Mount Ida Road, I keep all of my belongings at 23 Mount Ida Road, and I sleep there almost every night.

3. My father, Luis Alfredo Baez, lived at 23 Mount Ida Road with me from November or December 2018 until he was arrested in connection with this matter on May 13, 2019.

4. He had his own bedroom at 23 Mount Ida Road, with a bed where he slept. It was fully furnished and he kept clothing and personal belongings there.

5. My father slept at 23 Mount Ida Road regularly prior to May 13, 2019. He also sometimes slept at his partner Altagracia Arias's house.

6. My father also contributed to household chores, such as cooking and cleaning the apartment at 23 Mount Ida Road.

7. When we were both at home at 23 Mount Ida Road, my father and I would spend time preparing food together in the kitchen, talking about sports, and watching television. He used to cook for me and we would eat together in the apartment at 23 Mount Ida Road.

8. My father's partner, Altagracia Arias, used to visit us at 23 Mount Ida Road. Sometimes my two younger half-sisters would also come to 23 Mount Ida Road with my father. My father kept bunkbeds in one of the bedrooms at 23 Mount Ida Road so that his two youngest daughters would have somewhere to sleep when they stayed over.

9. My father also sometimes had friends visit at 23 Mount Ida Road to spend time talking or to gather before going out to a restaurant.

I declare under the pains and penalties of perjury that the foregoing is true and correct.

Donald Baez
_____
Donald Baez

6/16/2021
_____
Date